# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:18-cv-00134-MR-DSC

| | |
|---|---|
| CANDY LOSSIAH, Administratrix of the Estate of ANTHONY EDWARD LOSSIAH, )))) | |
| Plaintiff, )) | |
| vs. )) | **O R D E R** |
| UNITED STATES OF AMERICA, )) | |
| Defendant. )) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Doc. 9]; the Magistrate Judge's Memorandum and Recommendation [Doc. 18] regarding the disposition of that motion; and the Defendant's Objections to the Memorandum and Recommendation [Doc. 20].

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Honorable David S. Cayer, United States Magistrate Judge, was designated to consider the Defendant's motion and to submit a recommendation for its disposition.

On February 13, 2019, the Magistrate Judge filed a Memorandum and Recommendation in this case containing conclusions of law in support of a

recommendation regarding the motion to dismiss. [Doc. 18]. The Magistrate Judge advised the parties that they had fourteen (14) days, or until February 27, 2019, to file written objections to the recommendation. [Id.]. On February 19, 2019, Defendant sought and was granted by text order a seven-day extension of time to file written objections to the recommendation, making Defendant's objections due on March 6, 2019. [Doc. 19]. On March 5, 2019, Defendant timely filed Objections to the Memorandum and Recommendation. [Doc. 20]. On March 18, 2019, Plaintiff filed a Reply to Defendant's Objections. [Doc. 21].

The Court has reviewed the Memorandum and Recommendation and the Defendant's Objections thereto and based thereon concludes as follows.

It is undisputed that the Plaintiff's decedent, Anthony Edward Lossiah ("Lossiah"), was a police officer employed by the Eastern Band of Cherokee Indians (EBCI) who was injured while on the job. This action is for medical malpractice in the treatment Lossiah received for those injuries at the Cherokee Indian Hospital (CIH or the Hospital), which malpractice allegedly resulted in his death. The Workers' Compensation action regarding the death has already been settled.

With respect to Defendant's Rule 12(b)(1) motion, the Magistrate Judge recommended denial of that motion concluding that Plaintiff's civil

2

action for malpractice is not barred by the Workers' Compensation Act (the "Act"). [Doc. 18 at 4]. Namely, for purposes of this lawsuit under the Federal Tort Claims Act (FTCA), the CIH medical personnel who treated Lossiah are deemed to be employees of the Public Health Service (PHS) pursuant to the EBCI's Compact with the Department of Health and Human Services (DHHS). Based thereon the Magistrate Judge concluded that "[f]or purposes of this lawsuit" the medical personnel who treated Lossiah were not employees of his employer (EBCI), and thus the limited remedy against one's employer under the Workers' Compensation statute did not apply. Defendant objects to that conclusion on the basis that CIH was "conducting the business" of the EBCI, Lossiah's employer, when Lossiah was treated at the Hospital and thus the Hospital comes within the scope of the immunity of N.C. Gen. Stat. § 97-9. [Doc. 10 at 17-21; Doc. 20 at 6, n. 3].

The Defendant's objection is, in part, well taken. The fact (or rather the legal fiction) that the CIH's employees are "deemed to be" employees of the PHS is not dispositive. That only serves to bring this action within the confines of the FTCA, and therefore makes the United States the proper defendant. However, "the United States is entitled to [any] protection of the immunity" provided by any state law provision affording immunity to "a similarly placed private employer." Lomando v. United States, 667 F.3d 363,

3

378-79 (3d Cir. 2011) (citing 28 U.S.C. § 2674). See also Schwarder v. United States, 974 F.2d 1118, 1121-22 (9th Cir. 1992). This "private-party analogue" allows the Defendant to step into the shoes of the CIH and avail itself of all defenses the CIH would have had. FDIC v. Meyer, 510 U.S. 471, 477 (1994).

Section 97-9 of the Workers' Compensation Act requires employers to secure payment of compensation to their employees in accordance with the Act and provides: "[W]hile such security remains in force, he or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified." N.C. Gen. Stat. § 97-9 (emphasis added). "By its plain language, N.C.G.S. § 97-9 extends exclusivity protection beyond the employer to 'those conducting [the employer's] business.'" Hamby v. Profile Products, L.L.C., 361 N.C. 630, 636, 652 S.E.2d 231, 234 (2007). Typically, this provision protects co-employees of an injured workers' compensation claimant from being sued where the co-employee's negligence caused or contributed to the claimant's compensable injury. See Strickland v. King, 293 N.C. 731, 733, 239 S.E.2d 243, 244 (1977) ("[A]n employee subject to the Act whose injuries arise out of and in the course of his employment may not maintain a common law action against a negligent co-employee."). In Hamby, the North

4

Carolina Supreme Court found that the sole member-manager of an employer was conducting the business of the employer where the member-manager was "exclusively charged with management" of the employer's business pursuant to the employer's operating agreement. 361 N.C. at 636-38, 652 S.E.2d at 235-36. Applying Hamby, the Defendant argues that the CIH was conducting the business of the EBCI because "the Cherokee Hospital is a component unit of the EBCI" and "the hospital is operated within the structure of tribal governance created by the EBCI." [Doc. 10 at 18]. Therefore, the Defendant concludes, "the exclusive remedy provision [of the Act] extends to the Cherokee Hospital, and in turn the United States." [Id. at 19].

Defendant's argument oversimplifies the analysis necessary for discerning the meaning of "those conducting his [the employer's] business" in § 97-9. North Carolina's Workers' Compensation Act was enacted for the purpose of "provid[ing] certain limited benefits to an injured employee regardless of negligence on the part of the employer, and simultaneously to deprive the employee of certain rights that he had at common law." Brown v. Motor Inns of Carolina, Inc., 47 N.C. App. 115, 118, 266 S.E.2d 848, 849, disc. rev. denied, 301 N.C. 86 (1980). As such, the Workers' Compensation Act embodies a certain policy trade-off. Underlying this trade-off are two

crucial facts: (1) that an injured employee is in serious jeopardy because his/her livelihood is at stake during any prolonged determination of an employer's liability, and (2) that the employer's control over the workplace puts the employer in a position to more easily prevent and avoid employee injuries. Thus an employer is strictly liable for a workplace injury, but to an extent less than common law liability in negligence. A cornerstone of this trade-off, of course, is the employer's control over the conditions of the workplace and the employee's work activities. For this reason, a parent corporation of the employer corporation is not liable for a workplace injury, absent a showing of direct or day-to-day control over the workplace activities by the parent. Edwards v. GE Lighting Sys. Inc., 200 N.C. App. 754, 685 S.E.2d 146 (2009); Richmond v. Indalex, Inc., 308 F.Supp.2d 648 (M.D.N.C. 2004). Determining whether one is "conducting the employer's business" is a matter of analyzing the subject party's control. An employer has control over an employee's co-worker. Thus, the co-worker is conducting the employer's business, and the employer is liable pursuant to § 97-9. Strickland, 293 N.C. at 733, 239 S.E.2d at 244. An LLC employer is liable pursuant to § 97-9 for the actions of the LLC's sole member-manager because of the control that party has over the workplace and the conditions

of the claimant's employment. Hamby, 361 N.C. at 363-38, 652 S.E.2d at 235-36.

In the present case, the Cherokee Indian Hospital does not conduct the EBCI's business, as that phrase is intended by § 97-9. The CIH is not involved in the day-to-day operations of the EBCI or charged with managing the EBCI in any respect, much less with regard to the ECBI police department or the conditions or circumstances of Lossiah's employment. The Hospital exists as a separate entity that is operated and controlled by its own Board of the Cherokee Indian Hospital Authority (CIHA).[1] The CIHA is an umbrella body that operates the CIH, as well as other clinics and health programs run for the EBCI. The Eastern Band of Cherokee Indians Code of Ordinances ("Tribal Code") Section 130B-5 sets forth the powers and duties of the Governing Board of the CIHA. It provides, in part:

> (1) The CIHA Governing Board shall be responsible for direction and oversight of the Cherokee Indian Hospital, and other health programs as may be assigned to the CIHA by resolution of the Tribal Council.
>
> (2) In the oversight of assigned health programs, the Governing Board shall have the authority to hire an experienced chief executive officer (CEO) to manage day-to-day operations of the programs.

---

[1] The parties do not dispute that Lossiah was employed by the EBCI. The Government concedes that the healthcare providers whose alleged negligence gave rise to the instant case were employees of the CIH, not the EBCI. [Doc. 10 at 17; Doc. 20 at 6, n. 3].

7

The CEO shall serve at the pleasure of the Governing Board.

(3) The Board shall establish personnel policies and procedures for employees of the programs it administers…. The Board shall have the authority to set rates of pay … as necessary to attract and retain qualified staff. The Principal, Vice Chief and Tribal Council shall not be involved in any individual employee hiring, firing, and discipline decisions.

(4) The Board shall, in consultation with the medical staff, establish policies and procedures for the delineation of clinical privileges, including a fair hearing process for privilege restriction or termination, and oversight of medical staff quality improvement activities.

(5) The Board shall establish policies and procedures for effective management and delivery of health care, sufficient to ensure accreditation of the Cherokee Indian Hospital and other health programs as assigned by the Tribal Council.

(6) The Governing Board shall develop long range plans for improvement of patient care, within the limits of available federal and Tribal funding….

(7) The Governing Board shall have full authority to establish and amend the budget consistent with patient needs for use of all funds received and appropriated from federal, Tribal, and other sources, subject to any priorities established by the Tribal Council and any grant conditions or restrictions….

Tribal Code § 130B-5.  Further, the declaration of need for the CIHA provides: "Improved performance and quality patient care require professional management, free from inappropriate political influence or interference with day-to[-]day personnel and patient care decisions.  Health system employees must be supervised in an impartial manner, under a fair and efficient personnel policy, so they can provide quality medical care at a reasonable cost."  Tribal Code § 130B-2(4)(c).  As such, the Tribal Code establishes the CIHA as a "component unit" distinctly separate from any operation by or of the EBCI.  As such, the CIH may come within the purview of § 97-9 with regard to an injury to a nurse arising from a mishap in the operating room (regardless of negligence), but not with regard to the medical negligence that contributed to an injury of a person who <u>happens</u> to be an employee of the EBCI.

Therefore, Defendant's argument that this Court lacks subject matter jurisdiction because the Act's exclusivity provision applies to Defendant, as it stands in the shoes of the CIHA under the FTCA, is without merit.

Defendant also objects to the Memorandum and Recommendation based on the Magistrate Judge's conclusion that the Settlement Agreement resolving the Workers' Compensation claim does not bar this action.  The Magistrate Judge reasoned that a wrongful death action can only be brought

9

by the personal representative on behalf of the estate, citing Greer v. Parsons, 331 N.C. 368, 416 S.E.2d 174 (1992), Graves v. Welborn, 260 N.C. 688, 133 S.E.2d 761 (1963), and other authorities, but that the personal representative was not a party to the Settlement Agreement. [Doc. 10-1 at 1, 16].

Defendant objects, citing N.C. Gen. Stat. § 97-10.1, arguing that the remedy pursuant to the Workers' Compensation statute "shall exclude all other rights and remedies of … the personal representative as against the employer." Id. [Doc. 20 at 15].

Defendant misses the mark in at least two respects. First, § 97-10.1 says nothing regarding the scope of this Settlement Agreement or any other agreement. It simply states that the estate's (personal representative's) claim against the employer, is governed by the Workers' Compensation statute and not by common law. That does not change the fact that the personal representative was not a party to the agreement and thus did not release the present claim.[2]

---

[2] Notwithstanding the language Defendant cites in § 97-10.1, it is clear that a death claim pursuant to the Workers' Compensation Act is properly brought by certain beneficiaries, not the estate or personal representative of the deceased. N.C. Gen. Stat. § 97-38. On the other hand, a wrongful death medical malpractice claim, such as the present case, can only be brought by the personal representative. N.C. Gen. Stat. § 28-18-2, Livingston v. United States, 817 F.Supp. 601, 604 (E.D.N.C. 1993). It is not before this Court as to whether the failure of the personal representative to execute the Settlement Agreement left open any potential claim by the personal representative against the employer.

Second, the Settlement Agreement is clear as to what it releases, and it does not include this claim. It releases claims against any parties "charged or chargeable with responsibility or liability … which … [Plaintiffs] ever had or may have, <u>by reason of or growing out of the terms and provisions of the North Carolina Workers' Compensation Act</u>." [Doc. 10-1 at 15]. This claim asserts no liability growing out of the terms and provisions of the Workers' Compensation Act. Quite the contrary, Plaintiff herein asserts a medical malpractice claim entirely outside of any liability that arose pursuant to the Act. As such, this claim is outside the scope of the claims released in the Settlement Agreement.

Accordingly, the Court hereby overrules the Defendant's Objections and accepts the Magistrate Judge's recommendation regarding the motion to dismiss.

**IT IS, THEREFORE, ORDERED** that the Defendant's Objections to the Memorandum and Recommendation [Doc. 20] are **OVERRULED**; the Memorandum and Recommendation [Doc. 18] is **ACCEPTED**; and the Defendant's Motion to Dismiss [Doc. 9] is **DENIED**.

**IT IS SO ORDERED**.

Signed: April 10, 2019

Martin Reidinger
United States District Judge